712 F.2d 374
 Monrad VIKSE; Jacob Lang; Delano W. Lang; Elmer F. Lang;
James M. Wieseler and Marietta L. Wieseler, husband and
wife, Myron Wieseler and Joyce Wieseler, husband and wife;
and Mathilda Wieseler, Appellants,
v.
BASIN ELECTRIC POWER COOPERATIVE, a North Dakota cooperative
corporation; C.R. Thiessen; Clarence Welander; Dennis
Lindberg; Marvin Beyers; George A. Hargens; J. William
Keller; Quentin Louden; Jim Frame and Fred W. Schmidt, Appellees.
 No. 82-1614.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 15, 1983.
Decided July 25, 1983.
 
 Jos. A. Vogel, Jr., Vogel Law Firm, Mandan, N.D., for appellants.
 Malcolm H. Brown, Bair, Brown & Kautzmann, Mandan, N.D., for appellees.
 Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and ROBERTS, District Judge.*
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 A group of South Dakota landowners brought this civil rights action under 42 U.S.C. § 1983 claiming that its members were denied equal protection of the laws because Basin Electric Power Cooperative and its officers made additional payments to landowners in North Dakota who, like appellants, had had their property condemned by the utility. We find no denial of equal protection and affirm the judgment of the district court[1] denying the claim.
 
 
 2
 Basin, a private generator of electricity located in North Dakota, planned to construct a transmission line from its Antelope Valley Station near Beulah, North Dakota, to Huron, South Dakota. It was necessary for Basin to obtain easements across the real estate in the path of the line. Basin was granted the power of eminent domain by both North Dakota and South Dakota.
 
 
 3
 Appellants are among the few South Dakota landowners who refused to settle with Basin. Appellants went to trial in condemnation cases for the easements, and judgments were obtained between October and December, 1979. These judgments are now final and have been paid. The claims of appellants Monrad Vikse, Jacob Lang, Delano W. Lang, and Elmer F. Lang were appealed to the Supreme Court of South Dakota. Basin Electric Power Cooperative v. Lang, 304 N.W.2d 715 (S.D.1981).
 
 
 4
 Basin acquired easements for 96% of the right-of-way in South Dakota by negotiation and settlement. Basin agreed with the settling landowners, either orally or in writing, that in the event it paid other landowners more per acre, outside of condemnation awards, it would pay additional amounts to these settling landowners so that all would be paid equally.
 
 
 5
 In contrast to the situation in South Dakota, Basin encountered organized resistance when it commenced negotiations with North Dakota landowners. A loose-knit landowners' organization demanded that negotiations be made collectively rather than on an individual basis, and that the negotiations be conducted on its behalf by the one law firm which had represented most of the individual North Dakota landowners. Approximately 220 separate eminent domain proceedings were instituted by Basin in North Dakota in March, 1980. In May of 1980, after several of the cases were tried, Basin and the North Dakota landowners' group arrived at a basic settlement agreement regarding the compensation to be paid for easement acquisition. This agreement set per acre prices of $619 for pastureland and $825 for cropland. These prices were substantially higher than both the amounts paid to those landowners in South Dakota who had negotiated settlements and the jury awards received by appellants in South Dakota.
 
 
 6
 Basin made additional payments to the North Dakota condemnees who had received jury awards of less than $619 for pastureland or $825 for cropland, so that all would receive the amount called for in the agreement. Basin made no such additional payments to the South Dakota condemnees, including appellants.
 
 
 7
 Basin made additional payments to all North Dakota and South Dakota landowners from whom it had acquired easements by negotiation and settlement so that all would receive the per acre prices called for in the basic settlement agreement.
 
 
 8
 Appellants brought this action under 42 U.S.C. § 1983 claiming denial of their constitutional rights by Basin's paying additional amounts to other landowners. The district court granted summary judgment in favor of defendants on two alternative grounds: (1) Basin was not acting under color of state law, and (2) appellants were not denied due process or equal protection.
 
 
 9
 On appeal appellants argue denial of equal protection in Basins' failure to pay them an additional amount based on the basic settlement agreement while doing so to North Dakota landowners who had received jury awards less than the prices called for in the basic settlement agreement. They also argue that summary judgment should not have been granted. They do not raise the due process arguments presented to the district court.
 
 
 10
 Appellants argue that summary judgment was improper in this case because there were disputes as to material questions of fact. We discern only one issue of fact that is in dispute, and that is whether Basin included in its offer to settle with appellants an offer to increase compensation if any other landowner was later paid more. Appellants claim that Basin never made such an offer. We do not view this particular fact as material for the question presented in this case, which is based on the limited question of whether appellants were denied equal protection because the North Dakota landowners who tried their cases received additional payments as a result of the group settlement. The other facts upon which the district court based its decision and upon which we rely are not in conflict. Both parties filed affidavits as well as statements of uncontested material facts under Local Rule 5(b). Although the record is not as comprehensive as we would have liked, the necessary facts are ascertainable and are undisputed. Under the circumstances, appellants were obligated to "set forth specific facts showing that there is a general issue for trial." Fed.R.Civ.P. 56(e). This they failed to do.
 
 
 11
 To establish a cause of action under 42 U.S.C. § 1983, appellants must establish (1) that they have been deprived of a right or privilege secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56, 98 S.Ct. 1729, 1732-1733, 56 L.Ed.2d 185 (1978).
 
 
 12
 We assume without deciding that defendants acted under color of state law in this case. While it may be true that a private corporation acts under color of state law when it exercises its power of eminent domain, see Baldwin v. Appalachian Power Co., 556 F.2d 241, 242 (4th Cir.1977); Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352-53, 95 S.Ct. 449, 454-455, 42 L.Ed.2d 477, 485 (1974), the same may not be true where the private corporation acquires property under the threatened exercise of its eminent domain power, see Bloomer Shippers Assoc. v. Illinois Central Gulf Railroad Co., 655 F.2d 772, 776 n. 2 (7th Cir.1981). The alleged deprivation in this case relates to voluntary payments made after property rights had been acquired by condemnation.
 
 
 13
 Appellants have not shown that they were deprived of any right or privilege secured by the Constitution or the laws of the United States, and specifically that they were deprived of equal protection of the laws. The record demonstrates a reasonable basis for the distinction made by Basin in treatment of appellants and the North Dakota condemnees and that the distinction furthered a legitimate state purpose. See Nichols' The Law of Eminent Domain § 4.15, at p. 4-233 (1981); Redevelopment Authority of Nanticoke v. Spencer, 23 Pa.Cmwlth. 77, 350 A.2d 442 (1976). See also Zobel v. Williams, 457 U.S. 55, 58-60, 102 S.Ct. 2309, 2311-13, 72 L.Ed.2d 672, 677-78 (1982). The organized opposition encountered by Basin in North Dakota prompted a different approach to that used in South Dakota. After many condemnation proceedings were instituted in North Dakota, a number of the cases proceeded to trial. After reviewing the jury awards in the cases tried, Basin and the North Dakota landowners were able to reach the basic settlement agreement, based on the average of the jury awards. Thereafter, most of the pending cases settled. The decision to handle the North Dakota landowners in this fashion was based on consideration of the concerted opposition offered by the landowners, the jury awards which had been rendered in North Dakota, and on Basin's construction timetable. Because of the acquisition of the easements in South Dakota in 1978 and 1979, Basin commenced construction of the transmission line in South Dakota. Construction could not move forward in North Dakota until well into 1980 and the construction schedule played a part in reaching the agreement with the North Dakota landowners. The North Dakota landowners who had gone to court in the cases which were essentially test cases and received less than the negotiated settlement comprise a group that can be rationally distinguished from appellants. It is apparent that appellants are attempting to turn hard bargaining into an equal protection argument. It is also apparent that the distinction between the North Dakota landowners and the litigating appellants furthered the legitimate state purpose of hastening the construction of the transmission line.
 
 
 14
 In this appeal appellants do not challenge the distinction between them and the landowners in North Dakota and South Dakota who had reached a settlement with Basin and who received additional sums.
 
 
 15
 Accordingly, the district court's order granting summary judgment in favor of Basin and its officers is affirmed.
 
 
 
 *
 The Honorable Ross T. Roberts, United States District Judge for the Western District of Missouri, sitting by designation
 
 
 [1]
 The Honorable Bruce M. Van Sickle, United States District Judge for the District of North Dakota